# IN THE SUPREME COURT, STATE OF WYOMING

# 2024 WY 78

**APRIL TERM, A.D. 2024**

**July 19, 2024**

RICK JAMES LITTLE,

Appellant
(Defendant),

v.

S-23-0043, S-23-0294

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Campbell County*
*The Honorable Stuart S. Healy III, Judge*

*Representing Appellant:*

Office of the State Public Defender: Diane Lozano, Wyoming State Public Defender; Kirk A. Morgan, Chief Appellate Counsel; Jeremy Meerkreebs, Assistant Appellate Counsel. Argument by Mr. Meerkreebs.

*Representing Appellee:*

Bridget L. Hill, Attorney General; Jenny L. Craig, Deputy Attorney General; Kristen R. Jones, Senior Assistant Attorney General; John J. Woykovsky, Senior Assistant Attorney General, Darrell D. Jackson, Faculty Director Prosecution Assistance Program; Kaylee A. Sims, Student Directory; Jared Lange, Student Intern. Argument by Mr. Lange.

*Before FOX, C.J., and BOOMGAARDEN, GRAY, FENN, and JAROSH, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FOX, Chief Justice.**

[¶1]    Rick James Little was found guilty by a jury of one count of sexual abuse of a minor in the third degree and one misdemeanor count of attempted sexual battery. He filed a motion for new trial, claiming that he received ineffective assistance of counsel. The district court denied the motion, finding that Mr. Little failed to show that, absent any deficiencies in his counsel's performance, there was a reasonable probability that the outcome of the trial would have been more favorable to him. We affirm.

## ISSUE

[¶2]    The sole issue for our consideration is whether Mr. Little was denied the effective assistance of counsel.

## FACTS

[¶3]    Mr. Little met BLC and BMC through their parents, and sometimes hung out with them in their garage. In October 2021, they reported to police that Mr. Little had been alone in the garage with them, had kissed and touched BLC (age 15 at the time) on her breasts and above her pubic area; and had touched BMC (age 17 at the time) on her inner thigh and attempted to grab her breasts. When police interviewed Mr. Little, he denied that he had touched the young women inappropriately, and said he had never been alone with them without an adult present. Police also interviewed the girls' mother, who "showed [the officer] a text message that she received from [Mr. Little] when [he] was out in the garage with her daughters that was dated October 1."

[¶4]    Mr. Little was charged with third degree sexual abuse of a minor in violation of Wyo. Stat. Ann. §§ 6-2-316(a)(iv), (b) and 6-10-102; and attempted sexual battery, in violation of Wyo. Stat. Ann. §§ 6-2-313(a), (b), 6-1-301(a)(i) and 6-1-304. The district court appointed a public defender to represent him, but he was soon replaced by retained counsel, who promptly filed a demand for discovery and a demand for notice of intent to introduce W.R.E. 404(b) evidence. The State filed its demand for notice of alibi April 12, 2022, which the court's criminal case management order required Defendant to provide on or before April 27, 2022. The State did not file a 404(b) notice; and Mr. Little provided no notice of alibi defense. In his pretrial memo, filed July 26, 2022, Mr. Little designated two witnesses:

> 1.  Amber Everly. If called to testify Ms. Everly will testify as to her knowledge and understanding of the Defendant. She will testify as to the precautions he has taken since being released from incarceration about not being in the presence of underage females.

1

**2.** Gary Owen c/o Wyoming Probation and Parole. Mr. Owen was the Defendant's parole officer during the times complained of. If called to testify Mr. Owens [sic] will testify as to his interactions with the Defendant, discussions he had with the Defendant regarding the incidents complained of, and the Defendant's progress as a parolee.

[¶5]   The jury trial began August 31, 2022. During voir dire, Mr. Little's counsel told the jury panel:

> I anticipate Mr. Little is going to testify. Mr. Little is going to testify that he's been convicted of sexual-based assaults. The reason I ask whether folks had looked at the registry, Mr. Little is on the registry. And if Mr. Little takes the stand and he testifies, Mr. Henkes is going to have an opportunity to cross-examine him. And I've struggled long and hard with this question, ladies and gentlemen, but is there anybody, based on Mr. Little's prior history, would just shut down over the fact that if it happened once before, it had to have happened again?
>
> Can I get a commitment out of everybody that you will listen to both sides of the story regardless of this man's past? Is there anybody that believes some things simply can't be forgiven or undone?
>
> Is everybody willing to allow for the fact that redemption is for everybody, that the system can work, that people can be brought back into productive members of our society?

His counsel revisited the theme of Mr. Little's prior convictions in his opening statement:

> And I told you in voir dire that Mr. Little has been down this road in the past. What you're going to hear from Mr. Little is a very uncomfortable story. He's going to tell you what it was like serving time for the crimes that he's been -- he was convicted of, and what it was like serving time for the crimes that he's being charged with. He's going to tell you about steps he took to make sure that didn't happen.

[¶6]    The State called the two investigating officers, the two victims, and the victims' mother. Their testimony thoroughly supported the charges against Mr. Little.

[¶7]    Mr. Little was the only witness for the defense. After asking him his age (33), and how many children he had (four), his counsel moved on:

> Okay, Rick, let's talk a little bit about your past. Have you been convicted of third degree sexual assault of a minor?
>
> A.    Yes, I have.
>
> Q.    Do you remember when that was?
>
> A.    When I was 18.
>
> Q.    And did that happen here in Campbell County?
>
> A.    Yes, it did.
>
> Q.    How old was the victim?
>
> A.    She was 12.
>
> Q.    You were 18?
>
> A.    Yes.
>
> Q.    She was 12.

He further inquired:

> Q.    (By Mr. Abraham) After -- Rick, after that first conviction did you receive a subsequent conviction?
>
> A.    Yes, I did.
>
> Q.    And what was that for?
>
> A.    Second degree sexual abuse of a minor.
>
> Q.    And based on that, were you eventually placed with Department of Corrections? "Yes" or "no"?

3

A.    Yes.

The questions that followed explored the sex offender treatment that Mr. Little received, how he learned about his "triggers" that led up to the crimes he committed, and the continuing sex offender and life skills treatment that he received while on parole. As a result of this training, Mr. Little testified, he never allowed himself to be alone with minors. He described his friendship with the parents of BLC and BMC, and denied ever being "around the girls when their folks weren't around." He adamantly denied either touching the girls or being alone with them. He contended he "was never over there that night this happened." Instead, he stated, he spent every Friday night at Amber Everly's house to visit his daughter.

[¶8]    On cross-examination, the State questioned Mr. Little about Exhibit 3, a screen shot taken at 9:12 p.m. October 1, 2021, depicting BLC. The State called the victims' mother on rebuttal. She testified the screen shot was of a text message she received from Mr. Little on the night of October 1, 2021, of a photo of her daughter, in her garage. She testified that she provided the screen shot to the State that morning.

[¶9]    The jury found Mr. Little guilty of both charges, and he filed a timely Notice of Appeal and Motion for New Trial. At the hearing on the motion for new trial, Mr. Little's counsel recalled few details, but did make it clear that his theory of defense, "up until the day of trial, [was] that he wasn't there." But when the victims' mother testified regarding the text message and photo, "that was when the lid blew off the entire, the entire plan from the beginning." He insisted that Mr. Little made it very clear he wanted to testify. He stated he was aware that Amber Everly was a potential alibi witness; he believed he "would have" talked to her before he prepared his pretrial memo, but that he didn't pursue her potential alibi testimony because she was unable to specify the date and time Mr. Little was at her house. He testified that he had concerns about offering testimony of Mr. Little's prior convictions, that he had "hours of conversation" with his client about that, but that if the evidence came in through the State, it would "crucify" him. Although jail records only showed one visit by him to Mr. Little, on the day before trial, he disagreed that was the only time he visited his client. He stated he asked Mr. Little several times before voir dire whether he wanted to testify, and each time he was adamant that he did.

[¶10]    Ms. Everly testified that defense counsel first spoke to her about two days before trial. She said she took time off work to testify at Mr. Little's trial but at the end of the second day was told by Mr. Little's counsel that he wouldn't call her. (Counsel denied this, saying that when he went to look for her outside the courtroom, she had gone to work.) And she testified that Mr. Little was at her house October 1, there was a barbecue at her house, which he attended and stayed late. However, she could not say that he was at her house the entire evening; she was unsure how long he was there that night.

4

[¶11]   Mr. Little testified regarding his pre-trial communication with his counsel. He said he saw him only once in person, the day before trial. During that meeting, his mother was on the phone and there was a discussion of the possibility of his testifying, but he first learned the jury was going to hear about his prior convictions at voir dire. He said he only decided to testify on the second day of trial, because by that time the damage had been done, "my past was already out on the table." He admitted on cross-examination that his counsel had advised him prior to trial of the potential dangers of testifying.

[¶12]   The district court made some important fact findings. It found Mr. Little's Rule 21 testimony that he only decided to testify on the second day of trial because his counsel had already raised his prior convictions in voir dire and opening "not credible." It found credible trial counsel's testimony that he discussed the potential necessity of Mr. Little testifying several times before trial. It further relied on the exchange the judge had with Mr. Little at trial, before his testimony, in which the court reminded him the choice was his, asked if he was satisfied with the advice counsel had given him, and "without objection heard his counsel represent to the court that he had made the decision to testify prior to trial and without being 'pressured or pushed.'"

[¶13]   The district court found that, although the defense strategy of raising the prior convictions may have been "unorthodox," it was not unreasonable under the circumstances where Mr. Little insisted on testifying. Ultimately, the court concluded that the ineffective assistance of counsel claim based on telling the jury of Mr. Little's prior convictions failed on the prejudice prong.

> Here, the State's case was strong. It was not just a case of "he said/she said," as suggested by defense counsel in his opening statement. Rather, two victims, BMC and BLC, described in detail what happened when they were alone with Defendant in their garage on the night of October 1. Moreover, notwithstanding Defendant's testimony that he had never been alone with the girls, Knucky, their mother, corroborated the fact that Defendant was with the girls alone, in the garage on the night of October 1. And, on the second day of trial, she produced a text message ostensibly from Defendant to her on October 1, 2021, corroborating her testimony and the testimony of BLC and BMC.

[¶14]   The district court similarly disposed of the argument counsel provided ineffective assistance in failing to properly investigate an alibi defense that Amber Everly might have provided, finding that defense counsel had spoken to her about Mr. Little's presence at her home on the night of October 1, and that her equivocation on the date and time of his presence "does not establish an alibi defense." Further, the production of the text

message from that night, sent from the garage at 9:12 p.m. on October 1, 2021, was dispositive of the alibi defense.

[¶15] Mr. Little appealed the Rule 21 Order, which was consolidated with the direct appeal.

## *DISCUSSION*

[¶16] Mr. Little argues that his trial counsel provided ineffective assistance in two ways: failing to investigate and present evidence of Mr. Little's alibi, and introducing otherwise inadmissible 404(b) evidence about his client's past convictions. The State contends these were reasonable tactical decisions that did not fall below the standards of a reasonably competent attorney, and that Mr. Little cannot show prejudice resulting from any alleged deficiencies. We agree that Mr. Little has not shown a reasonable probability that he would have received a more favorable outcome absent the alleged deficiencies of his trial counsel.

## I.   Standard of Review

[¶17] We have stated:

> "Ineffective assistance of counsel claims 'involve mixed questions of law and fact.'" *Jendresen v. State*, 2021 WY 82, ¶ 36, 491 P.3d 273, 284 (Wyo. 2021) (quoting *Sides v. State*, 2021 WY 42, ¶ 34, 483 P.3d 128, 137 (Wyo. 2021)). "We review the district court's findings of fact for clear error and its conclusions of law de novo." *Id*.

> A criminal defendant has the right to effective assistance of counsel. *Buckingham v. State*, 2022 WY 99, ¶ 25, 515 P.3d 615, 619 (Wyo. 2022) (citing U.S. Const. amend. VI; Wyo. Const., art. 1, § 10; *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 2063, 80 L. Ed.2d 674 (1984)). To succeed on a claim of ineffectiveness, a defendant "must show <u>both</u> that counsel's performance was deficient, and he was prejudiced as a result." *Buckingham*, 2022 WY 99, ¶ 25, 515 P.3d at 619 (quoting *Steplock v. State*, 2022 WY 12, ¶ 20, 502 P.3d 930, 936 (Wyo. 2022)). Counsel acts deficiently when he "fails to render such assistance as would have been offered by a reasonably competent attorney." *Steplock*, 2022 WY 12, ¶ 20, 502 P.3d at 936-37 (quoting *Neidlinger v. State*, 2021 WY 39, ¶ 53, 482 P.3d 337, 351-52 (Wyo. 2021)). "Prejudice occurs when there is 'a

reasonable probability that, absent counsel's deficient assistance, the outcome of appellant's trial would have been different.'" *Steplock*, 2022 WY 12, ¶ 20, 502 P.3d at 937 (quoting *Neidlinger*, 2021 WY 39, ¶ 53, 482 P.3d at 351-52). We may, and often do, dispose of an ineffective assistance claim solely on the prejudice prong. *See Steplock*, 2022 WY 12, ¶ 22, 502 P.3d at 937 (disposing of ineffectiveness claim on the ground of lack of prejudice is often the preferred course.) (quoting *Leners v. State*, 2021 WY 67, ¶ 21, 486 P.3d 1013, 1018 (Wyo. 2021), *cert. denied*, —— U.S. ——, 142 S.Ct. 410, 211 L. Ed.2d 220 (2021)); *see also Tarpey v. State*, 2023 WY 14, ¶ 55, 523 P.3d 916, 932 (Wyo. 2023); *Buckingham*, 2022 WY 99, ¶ 27, 515 P.3d at 619.

*Bolen v. State*, 2024 WY 48, ¶¶ 32-33, 547 P.3d 961, 968 (Wyo. 2024).

## II.    Mr. Little's right to effective assistance of counsel was not violated.

[¶18]  Although the parties address the failure to investigate the alibi defense and the presentation of evidence of Mr. Little's prior convictions separately, they are interrelated. This is because the degree of deference to counsel's strategic choices under *Strickland* depends on the adequacy of the investigation. Thus, the State's position that "an attorney's strategic decisions are 'virtually unchallengeable,'" *citing Tarpey v. State*, 2023 WY 14, ¶ 58, 523 P.3d 916, 933 (Wyo. 2023), omits an important qualifier:

> [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.

*Strickland v. Washington*, 466 U.S. 668, 690–91, 104 S. Ct. 2052, 2066, 80 L. Ed. 2d 674 (1984). A strategic choice made in ignorance of critical facts that would have been revealed with a reasonable investigation is not "virtually unchallengeable."

[¶19]  *Campbell v. Reardon*, 780 F.3d 752 (7th Cir. 2015), illustrates this. There, Mr. Campbell was found guilty of first-degree murder. *Id.* at 759. The state court rejected his ineffective assistance of counsel argument, finding that it was a matter of trial strategy for defense counsel not to interview eyewitnesses to the crime because it would have been inconsistent with his theory that it was too dark to see. *Id.* at 763. On habeas review, the

7

Seventh Circuit rejected that reasoning, stating, "The fundamental problem with the state court's analysis—which made it not just incorrect but unreasonable—is that it ignored counsel's duty to perform a reasonable pretrial investigation **before** committing to a defense strategy." *Id. See also Wiggins v. Smith*, 539 U.S. 510, 511, 123 S. Ct. 2527, 2530, 156 L. Ed. 2d 471 (2003) ("[T]his Court's principal concern is not whether counsel should have presented a mitigation case, but whether the investigation supporting their decision not to introduce mitigating evidence of Wiggins' background was *itself reasonable.*"); 3 Crim. Pro. §11.10(c) (4th ed.).

[¶20] We are unable to find clear error in the district court's finding that trial counsel was credible when he testified he spoke with Amber Everly before submitting his pretrial memo, and that he consulted with his client several times about his concerns with him taking the stand. Even so, trial counsel arguably could have done more to explore the alibi defense. This may have affected the decision to have Mr. Little testify, and in turn the decision to self-disclose problematic W.R.E. 404(b) evidence. There's a reason that Rule 404(b) generally prohibits such evidence. *Gleason v. State*, 2002 WY 161, ¶ 17, 57 P.3d 332, 340 (Wyo. 2002) (evidence of other crimes inadmissible when it is only to demonstrate that the defendant has a disposition to commit crimes). Even under W.R.E. 609 it was not a foregone conclusion that Mr. Little's prior crimes would have been admissible. Rule 609 only allows admission of evidence that the accused has been convicted of a crime if the court determines that its probative value outweighs its prejudicial effects. *Proffit v. State*, 2008 WY 114, ¶ 22, 193 P.3d 228, 237 (Wyo. 2008). We said:

> In Wyoming, we have given effect to that "presumption" in favor of exclusion where the witness is the accused by holding that "a testifying defendant is required to give answers only as to whether he had been previously convicted of a felony, as to what the felony was, and as to when the conviction was had." *Ramirez v. State,* 994 P.2d 970, 973 (Wyo. 2000). Given that limitation, it is error for a prosecutor to ask questions of the defendant seeking details about the prior conviction. *Taylor v. State,* 2001 WY 13, ¶ 22, 17 P.3d 715, 723 (Wyo. 2001). On the other hand, a defendant who explains his prior conviction during direct examination is subject to cross-examination about the details of the crime. *Ramirez,* 994 P.2d at 973.

*Proffit v. State*, 2008 WY 114, ¶¶ 22-23, 193 P.3d at 237.[1]

---

[1] Appellant does not contend that the statement in the affidavit of probable cause, that mother "showed Officer Sprague a text message that she received from [Mr. Little] when [Mr. Little] was out in the garage

8

[¶21]  Nonetheless, we need not resolve whether counsel's performance was deficient because Mr. Little has failed to show the required prejudice. Mr. Little argues that the alibi did not have to be fool proof to be worth investigating, which is true. But the alibi did need to be solid enough to support a conclusion that there is a reasonable probability the outcome would have been more favorable to Mr. Little to satisfy the prejudice prong to find ineffective assistance of counsel.[2]

[¶22]  *Campbell* is again instructive. There the court discussed the testimony of three eyewitnesses who were not called by the defense at trial, citing their specific testimony that they had seen two other men standing over the victim, and not Mr. Campbell, and that Mr. Campbell had "never touched" the victim. 780 F.3d at 759, 760. No such evidence of what a more thorough investigation might have revealed exists here. Amber Everly was "equivocal" about Mr. Little's presence at her house that night. None of the other guests testified at the Rule 21 hearing. The text photo on the victims' mother's phone was strong evidence Mr. Little was present in her garage that night.

[¶23]  In the end, like the district court, our conclusion that Mr. Little has not met his burden of demonstrating ineffective assistance of counsel rests on the failure to show "a reasonable probability that, absent counsel's deficient assistance, the outcome of appellant's trial would have been different." *Bindner v. State*, 2024 WY 53, ¶ 32, 548 P.3d 285, 293 (Wyo. 2024). The State's case against Mr. Little was strong. BLC and BMC both testified in detail about the events of that night; and their mother's text message refuted Mr. Little's contention that he was not there at all. There is simply not a reasonable probability that a more thorough investigation, or a more orthodox trial strategy, would have led to a more favorable outcome for Mr. Little.

## *CONCLUSION*

[¶24]  Because Mr. Little has not shown he was prejudiced by his counsel's alleged deficient performance, we find no ineffective assistance of counsel. Affirmed.

---

with her daughters that was dated for October 1," should have given rise to a duty to investigate that might have led to a different trial strategy.

[2] Mr. Little cites *Asch v. State*, 2003 WY 18, ¶ 43, 62 P.3d 945 (Wyo. 2003) for the proposition that "Failure to interview an eyewitness is so egregious that" prejudice can be presumed. However, whether interviewed or not, neither Ms. Everly nor any other guest at the party the night of October 1 was an eyewitness to the crime alleged.