2009 WY 25

**Bryan Allan TEMEN, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. S–08–0071.**

Supreme Court of Wyoming.

Feb. 24, 2009.

Representing Appellant: Diane M. Lozano, Wyoming State Public Defender; and Tina N. Kerin, Appellate Counsel.

Representing Appellee: Bruce A. Salzburg, Wyoming Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Jenny L. Craig, Assistant Attorney General.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

HILL, Justice.

[¶ 1] Appellant, Bryan Temen (Temen), was convicted of robbery and misdemeanor credit card fraud. He appeals those convictions asserting that the district court erred in allowing amendment of the information during trial. Temen was originally charged with felony credit card fraud, but the evidence presented at trial fell short of the $1,000.00 felony level, and the district court permitted amendment of the information to the misdemeanor level. In addition, Temen asserts that the district court erred in admitting prior bad acts evidence under W.R.E. 404(b). We will affirm.

### ISSUES

[¶ 2] Temen advances these two issues:

I. Did the trial court err in allowing amendment of the information during trial?

II. Did the trial court err in admitting evidence under W.R.E. 404(b)?

The State conformed its statement of the issues to those posed by Temen.

### FACTS AND PROCEEDINGS

[¶ 3] The issues raised in this appeal do not turn on the sufficiency of the evidence, so we will relate only an abbreviated version of the facts and only make reference to the proceedings as they relate to the amendment of the information and the admission of W.R.E. 404(b) evidence during the State's case in chief.

[¶ 4] On November 1, 2006, Deputy Foy with the Laramie County Sheriff's Department responded to a call regarding a robbery and unauthorized use of a credit card. The victim of the crimes, Anthony Flores, told Officer Foy that in the early morning hours of November 1, 2006, outside of a nightclub called The Den, he had been attacked by three men while he was sitting in his vehicle. He was hit in the head and face, his keys

were pulled out of the ignition of his vehicle, and his wallet was ripped from a chain that was attached to his pants. Mr. Flores stated that his Warren Federal Credit Union debit card[1] was inside his wallet and, since the time of the robbery, there had been several unauthorized transactions made using that card.

[¶ 5] Deputy Camery of the Laramie County Sheriff's Department conducted a further investigation into the incident. He met with the Site and Support Manager at Warren Federal Credit Union and was able to determine that $939.80 of unauthorized charges had been incurred on the victim's debit card and that there was an additional $672.32 of attempted purchases. Deputy Camery also observed video surveillance footage from the local WalMart Super Center, King Soopers, and Sapp Brothers Truck Stop, which showed two individuals using the victim's card. These individuals were identified as Schon Shafer and Temen. Further, a King Soopers Valued Customer Card issued to Temen was used in conjunction with the stolen card at King Soopers.

[¶ 6] Deputy Camery interviewed Schon Shafer, and Shafer stated that Temen told him he had assaulted a man at The Den, ripped the keys out of his vehicle's ignition, stole his wallet, and then used his credit card to make purchases. Deputy Camery then interviewed an individual named Joshua Jennings. Jennings related that Temen also had told him that he assaulted a man and stole his credit card, and that he and Shafer then made various purchases using the credit card.

[¶ 7] On March 6, 2007, the circuit court issued an arrest warrant for Temen after he had been charged by information with one count of robbery, in violation of Wyo. Stat. Ann. § 6–2–401(a)(i) (LexisNexis 2007), and one count of credit card fraud, whereby he had obtained property worth in excess of $1,000.00, in violation of Wyo. Stat. Ann. § 6–3–802(a)(i) and (b)(iii). Temen's arraignment was held on March 26, 2007, and he entered pleas of "not guilty" to both charges.

[¶ 8] In preparation for trial, the State filed a notice of intent to introduce evidence pursuant to W.R.E. 404(b). That notice informed Temen that the State intended to introduce evidence regarding his previous conviction for forgery to prove his intent and the absence of mistake or accident with respect to the current charges of credit card fraud. Temen then filed a motion in limine regarding potential evidence that might be produced pursuant to W.R.E. 609, if his client testified. On September 10, 2007, the district court held a motions hearing, during which it heard extensive argument regarding the introduction of Temen's previous conviction, as well as the use of prior convictions to impeach him if he testified on his own behalf. The district court indicated that it likely would be admissible and that Temen should be prepared to further address that issue when it arose during the course of trial. However, the trial court also determined that it could not make a final ruling on the issue until other evidence was presented at trial.

[¶ 9] Trial commenced on September 18, 2007. On the second day of trial, the State filed a Motion to Amend Charges. The district court granted the motion, and Count II, formerly charging felony credit card fraud, was reduced to a misdemeanor. At the close

1. Wyo. Stat. Ann. § 6–3–801(a)(i) defines "credit card:" "... [It] means an identification card or device issued by a business organization authorizing the person to whom issued to purchase or obtain property or services on credit."

Although "credit card," "debit card," "charge card," etc., are often used interchangeably in day-to-day conversation, there are distinct differences in how various types of such "cards" work, especially in this age of instantaneous electronic bank and credit transactions. See http://en.wikipedia.org/wiki/Debit_card. Although the card at issue in this case was a "debit card," that phrase was used interchangeably with "credit card" throughout this case (thus, of necessity we

too have used them interchangeably). The debit card at issue in this case had an "overdraft courtesy pay" feature which permitted Flores to withdraw up to $750.00 beyond the actual balance in his account.

No issue was raised in this regard below, and none is raised in this appeal. However, we make brief mention of this matter because the Wyoming Legislature may want to update these statutes to reflect the many nuances now found within the credit/debit card industry. See, e.g., Idaho Code Ann. §§ 18–3122 through 18–3128 (financial transaction card) (Michie 2004 and Pocket Supp.2008).

of the State's case, the district court took judicial notice of the fact that Temen had been previously convicted of forgery, and so informed the jury. The parties had agreed to this method of introducing the W.R.E. 404(b) evidence.

[¶ 10] After Temen presented his case, which consisted solely of his own personal testimony, the jury returned guilty verdicts on both counts of the Amended Information. On January 11, 2008, the district court entered its Judgment and Sentence. Temen was sentenced to a term of incarceration of not less than eight nor more than ten years for the robbery and not less than four nor more than six months for the credit card fraud, with the sentences to run concurrently. He was also ordered to pay restitution and applicable fees. A timely notice of appeal was filed on January 24, 2008.

## DISCUSSION

### Amendment of the Information Mid–Trial

[¶ 11] Temen's contentions in this regard rely on W.R.Cr.P. 3(e) which provides:

(e) *Amendment of information or citation.*—Without leave of the court, the attorney for the state may amend an information or citation until five days before a preliminary examination in a case required to be tried in district court or until five days before trial for a case not required to be tried in district court. The court may permit an information or citation to be amended:

(1) With the defendant's consent, at any time before sentencing.

(2) Whether or not the defendant consents:

(A) At any time before trial if substantial rights of the defendant are not prejudiced.

(B) At any time before verdict or finding if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced.

We note at the outset that by its very terms the cited rule vests the district court with wide discretion in granting or denying a motion to amend an information.

[¶ 12] At the end of first day of trial, September 18, 2007, it became apparent that once the State finished introducing its evidence with respect to the felony credit card fraud charge, that there was a problem of proof in that the amount proved was $986.00, just shy of the felony level for that charge ($1,000.00). The district court called that matter to the State's attention and the State conceded, "I think we've got a problem. We'll work on that." Neither the clerk's record nor the trial transcript reflects that Temen's counsel objected to the amendment reducing the charge to a misdemeanor. The "2nd Amended Information" was not filed of record until September 24, 2007. However, during the trial proceedings on September 19, 2007, the district court informed the jury:

The charge originally referred against Mr. Temen to the allegation he violated the felony provisions of credit card use. The felony provisions of credit card misuse have a ceiling of more than $1,000. It became apparent from the testimony of Miss Thoe–Heuer that the amount involved was less than one thousand dollars.

Today I granted the motion of the State giving them permission to amend the information. An information is a technical term. That's the charge to allege a violation of a misdemeanor of credit card misuse because the evidence suggests it was less than a thousand dollars.

I'm not giving you this information to instruct you that the defendant has actually committed a crime, but just to advise you that the charge has been amended by the State to allege a violation of a misdemeanor rather than a felony, and I'm going to admonish you again to remind you again to remember the admonitions with regard to refraining from discussing the issues between each other.

[¶ 13] Defense counsel did not object to that instruction. We agree with the State that the proceedings strongly support a conclusion that defense counsel accepted the district court's decision to allow the amendment to the information under W.R.Cr.P. 3(e)(2)(B). We also conclude, under the circumstances presented by this case, that "no

additional or different offense" was charged, and that the "substantial rights" of the defendant were not prejudiced. See 1 Charles Alan Wright and Andrew D. Leipold, *Federal Practice and Procedure,* Criminal 4th § 129 (2008). In his argument, Temen makes no cogent argument, nor does he cite any pertinent authority, that would cause us to conclude that the amendment constituted the charging of a "different" offense or that he was in any way prejudiced by the amendment, whether that issue is addressed under our usual standards for addressing error, or under the plain error rule. Accordingly, we do not find any abuse of discretion by the district court in permitting the State to amend the information as it did. See *Wilkening v. State,* 2005 WY 127, ¶ 25, 120 P.3d 680, 688 (Wyo.2005); *Burton v. State,* 2002 WY 71, ¶ 44, 46 P.3d 309, 320–21 (Wyo.2002).

## W.R.E. 404(b) Evidence

[¶ 14] W.R.E. 404 provides:

(a) *Character evidence generally.*—Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:

(1) Character of Accused.—Evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same;

(2) Character of Victim.—Evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor;

(3) Character of Witness.—Evidence of the character of a witness, as provided in Rules 607, 608, and 609.

(b) *Other crimes, wrongs, or acts.*— Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, *intent,* preparation, plan, knowledge, identity, or *absence of mistake or accident.* [Emphasis added.]

■ [¶ 15] Temen previously had been convicted of forgery. The State gave Temen notice of its intent to use that conviction under this rule to show his use of the credit card was intentional and not the result of a mistake or accident. In its notice, the State relied in part on our decisions in *Sanville v. State,* 593 P.2d 1340, 1345 (Wyo.1979) and *Trevino v. State,* 2006 WY 113, ¶¶ 17–18, 142 P.3d 214, 219–20 (Wyo.2006). The prior crime at issue here was committed less than a year before the instant crime. It was apparent early on in the proceedings that Temen intended to testify on his own behalf and to deny any knowledge that the credit card was stolen or that he was otherwise involved in any of the crimes for which he was charged (and he ultimately testified to that effect).

[¶ 16] The standard of review we apply when analyzing the admission of W.R.E. 404(b) evidence is rigorous:

We review a district court's rulings on the admissibility of evidence, including uncharged misconduct evidence, for an abuse of discretion, and we will not reverse absent a clear abuse of such discretion. *Bromley v. State,* 2007 WY 20, ¶ 8, 150 P.3d 1202, 1206 (Wyo.2007). "A trial court abuses its discretion when it could not have reasonably concluded as it did." *Id.* at ¶ 8, at 1206–1207. The admissibility of uncharged misconduct evidence is governed by W.R.E. 404(b):

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The district court is to determine the admission of proffered evidence under this rule by applying the following test:

[B]ecause uncharged misconduct evidence carries an inherent danger for prejudice, we have also adopted a man-

datory procedure for testing its admissibility: (1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the probative value of the evidence must not be substantially outweighed by its potential for unfair prejudice; and (4) upon request, the trial court must instruct the jury that the similar acts evidence is to be considered only for the proper purpose for which it was admitted.

*Gleason v. State*, 2002 WY 161, ¶ 18, 57 P.3d 332, 340 (Wyo.2002). "Admissibility under W.R.E. 404(b) is not limited to the purposes set forth in the rule, and we have adopted a liberal approach toward admitting uncharged misconduct evidence." *Id.* *Harris v. State*, 2008 WY 23, ¶¶ 5–6, 177 P.3d 1166, 1168 (Wyo.2008).

[¶ 17]   In *Gleason v. State*, 2002 WY 161, ¶¶ 26–28, 57 P.3d 332, 342–43 (Wyo.2002) we provided this further guidance for trial courts to employ in deciding these very difficult questions:

Despite the resolution of this issue, we feel compelled to address in more detail the difficulties encountered in the appellate review of the admission of uncharged misconduct evidence under W.R.E. 404(b). The primary step in propounding uncharged misconduct evidence is identification of a proper purpose for its admission. In that regard, we have previously held that the State need not pinpoint but one purpose for admission of such evidence. *Sturgis [v. State]*, 932 P.2d [199] at 203 [ (Wyo.1997) ]. Nevertheless, it is incumbent upon the proponent to identify such purpose or purposes with specificity because, without such specificity, the balance of the *Vigil [v. State*, 926 P.2d 351 (Wyo. 1996) ] test cannot be applied. For evidence to be relevant, we must know the fact question to which it is relevant. For evidence to be probative, we must know what it is meant to prove.

For proper appellate review of the admissibility of evidence under W.R.E. 404(b), the record must reflect that the trial court required the State not only to identify the proper purpose for which uncharged misconduct evidence is being of-

fered, but also to explain how or why it is probative, and why it is more probative than prejudicial. In that regard, we have twice set out in a footnote the process that should be followed by the trial court in making that analysis. To make sure there is no doubt in the future that this is a required process, we will repeat it now, in the body of this opinion:

In determining the probative value of prior bad acts evidence, the trial court should consider the following factors:

1.   How clear is it that the defendant committed the prior bad act?

2.   Does the defendant dispute the issue on which the state is offering the prior bad acts evidence?

3.   Is other evidence available?

4.   Is the evidence unnecessarily cumulative?

5.   How much time has elapsed between the charged crime and the prior bad act?

Evidence is unfairly prejudicial if it tempts the jury to decide the case on an improper basis. In balancing against its probative value the unfair prejudice created by the evidence, the trial court should consider the extent to which the evidence distracts the jury from the central question whether the defendant committed the charged crime. The trial court should weigh these additional factors against the probative value of the evidence:

1.   The reprehensible nature of the prior bad act. The more reprehensible the act, the more likely the jury will be tempted to punish the defendant for the prior act.

2.   The sympathetic character of the alleged victim of the prior bad act. Again, the jury will be tempted to punish the defendant for the prior act if the victim was especially vulnerable.

3.   The similarity between the charged crime and the prior bad act. The more similar the acts, the greater is the likelihood that the jury will draw the improper inference that if

the defendant did it once, he probably did it again.

4. The comparative enormity of the charged crime and the prior bad act. When the prior act is a more serious offense than the charged crime, the introduction of that act will tend to place the defendant in a different and unfavorable light.

5. The comparable relevance of the prior bad act to the proper and forbidden inferences. Evidence of the prior bad act may be much more probative of bad character than it is of any legitimate inference permitted by Rule 404(b).

6. Whether the prior act resulted in a conviction. The jury may be tempted to punish the defendant if they believe he escaped punishment for the prior bad act.

*Rigler [v. State],* 941 P.2d [734] at 737 n. 1 [ (Wyo.1997) ] (*citing Dean [v. State],* 865 P.2d [601] at 609–10 n. 2 [ (Wyo.1993) ] ).

In *Rigler,* 941 P.2d at 737–38, we held that, so long as the record revealed that the trial court had subjected proposed uncharged misconduct evidence to the appropriate test of its probative value and prejudicial effect, the trial court need not make express findings on the record on each of these factors. Since that opinion was published, however, we have repeatedly been called upon to assess a trial court's exercise of discretion on such rulings, and we now remind the trial courts that, while express findings on **each** factor are not necessary, abuse of discretion, or the lack thereof, cannot be determined by reviewing a record that contains no information as to how that discretion was exercised. [Emphasis in original.]

[¶ 18] When the question of the admissibility of the W.R.E. 404(b) evidence was first brought to the district court's attention at a pretrial motions hearing, the district court heard some argument from defense counsel but declined, because of time pressures, to rule on Temen's objections to that evidence, except to indicate that it would probably be admissible.

[¶ 19] When the subject came up again, in light of Temen's desire to testify in his own defense, W.R.E. 609 was mixed into the discussion of the W.R.E. 404(b) evidence. Temen's principal concern was that the 404(b) evidence would be cumulative to any impeachment evidence the State sought to elicit.

[¶ 20] W.R.E. 609 provides:

(a) *General rule.*—For the purpose of attacking the credibility of a witness,

(1) evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and evidence that an accused has been convicted of such a crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused; and

(2) evidence that any witness has been convicted of a crime shall be admitted if it involved dishonesty or false statement, regardless of the punishment.

(b) *Time limit.*—Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. However, evidence of a conviction more than ten years old as calculated herein, is not admissible unless the proponent gives to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence.

(c) *Effect of pardon, annulment, or certificate of rehabilitation.*—Evidence of a conviction is not admissible under this rule if (1) the conviction has been the subject of a pardon, annulment, certificate of rehabilitation, or other equivalent procedure

based on a finding of the rehabilitation of the person convicted, and that person has not been convicted of a subsequent crime which was punishable by death or imprisonment in excess of one year, or (2) the conviction has been the subject of a pardon, annulment, or other equivalent procedure based on a finding of innocence.

(d) *Juvenile . adjudications.*—Evidence of juvenile adjudications is generally not admissible under this rule. The court may, however, in a criminal case allow evidence of a juvenile adjudication of a witness other than the accused if conviction of the offense would be admissible to attack the credibility of an adult and the court is satisfied that admission in evidence is necessary for a fair determination of the issue of guilt or innocence.

(e) *Pendency of appeal.*—The pendency of an appeal therefrom does not render evidence of a conviction inadmissible. Evidence of the pendency of an appeal is admissible.

██ [¶ 21] Defense counsel accepted the circumstance that if his client testified, then his prior convictions could be used to impeach him, and they in fact were, albeit with great restraint on the part of the State. The State merely asked Temen if he had been convicted of any felonies, and he replied that he had been so convicted three or four times. Although the discussion of the *Gleason* factors was very brief in this case, that may have been appropriate here in that defense counsel essentially limited his concerns to: (1) that the use of the prior conviction as W.R.E. 404(b) evidence was cumulative ("there's other evidence"), and (2) that its admission was more prejudicial than probative. This tended to relieve the district court of the urgency of going through all the matters outlined in the quoted material set out above (the five basic factors and the six supplemental factors). We have not mandated that the district court go through all those factors, item by item, and that would be

especially true if none of them are of any particular relevance. To the extent the district court could, or should, have done more analysis in this case, at most we would be compelled to conclude that that was a matter of harmless error, if it was error at all. W.R.A.P. 9.04. Moreover, the district court admonished the jury at the time the W.R.E. 404(b) evidence was admitted:

I have a document to read to you. The parties—the defense and the State—have entered into a stipulation, and that stipulation is as follows: On June 26th of 2006, the defendant pled guilty to and was convicted of the crime of forgery, which is a felony. This conviction took place in Laramie County.

I'm going to instruct you that I have admitted this evidence regarding this prior conviction for forgery for the limited purposes of establishing lack of mistake or accident by the defendant and intent of the defendant. You must not consider this conviction as evidence of his guilt of the crime charged and may only consider [it] for the limited purposes for which it was admitted.

[¶ 22] This admonition was reinforced by an instruction given to the jury in writing before deliberations began.

[¶ 23] Based upon these circumstances, we conclude that the district court did not abuse its discretion in admitting the disputed 404(b) evidence.

## CONCLUSION

[¶ 24] The judgment and sentence of the district court are affirmed in all respects.