2010 WY 170

Frank **RODRIGUEZ**, Appellant (Defendant),

v.

The **STATE** of Wyoming, Appellee (Plaintiff).

No. S–10–0003.

Supreme Court of Wyoming.

Dec. 23, 2010.

Representing Appellant: Patricia Lynn Bennett, H. Michael Bennett, PC, Cheyenne, Wyoming; Michael H. Reese, Michael H. Reese, PC, Cheyenne, Wyoming. Argument by Ms. Bennett.

Representing Appellee: Bruce A. Salzburg, Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Graham M. Smith, Assistant Attorney General. Argument by Mr. Smith.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

BURKE, Justice.

[¶ 1] Appellant, Frank Rodriguez, challenges his conviction on a felony charge of battery of a household member, third or subsequent offense, in violation of Wyo. Stat. Ann. § 6–2–501(f)(ii) (LexisNexis 2009). We will affirm.

## ISSUES

[¶ 2] Mr. Rodriguez presents these issues:

1. Did the admission of the alleged victim's statements through the testimony of the investigator violate Appellant's right to confront the witness against him?

2. In denying Appellant's motion for judgment of acquittal, did the district court improperly shift the burden of proof to the defense?

3. Was defense counsel ineffective in (1) failing to object to the alleged victim's statements introduced through the testimony of the investigating officer, and (2) by calling the alleged victim as a witness, thereby waiving Appellant's argument that he had been denied the right to confront the witness?

4. Did the district court abuse its discretion by admitting evidence of uncharged misconduct and prior bad acts?

## FACTS

[¶ 3] Around noon on January 9, 2009, Mr. Rodriguez's girlfriend, RH, agreed to give him a ride in her car. The couple began

to argue even before the car pulled away from the curb. RH later told the police officer that Mr. Rodriguez became "very belligerent, upset, [and] angry," and started calling her names. She got scared, pulled the car back to the curb, and jumped out of the car.

[¶ 4] As this occurred, three electrical workers were driving past in two separate vehicles. Each of the three witnessed different portions of the encounter between Mr. Rodriguez and RH, but collectively they testified about the entire incident. They saw RH jump out of the car, run in front of it "like she was trying to get away," and run toward the house. They saw Mr. Rodriguez jump out of the car and throw a book bag at her. When it struck her in the back, she "fell to the ground." As she tried to get up, Mr. Rodriguez "ran over, put his left hand down behind her neck, [and] pushed her to the ground." He then "hit her once when she was on the hood of the car, and then he hit her three more times ... when she was on the ground." After that, RH retreated to the house, and Mr. Rodriguez walked away quickly. One of the witnesses called the police to report the incident.

[¶ 5] It took the police officer about five minutes to arrive at the scene. He contacted RH, who had gone inside the house. He questioned her about the incident, and in brief, she confirmed that Mr. Rodriguez had grabbed her and thrown her on the ground. The police officer's testimony about what she told him will be quoted at some length later in the discussion. On the basis of his discussion with RH, the police officer contacted Mr. Rodriguez and interviewed him. Mr. Rodriguez confirmed that RH was his girlfriend, that he had become very upset with her in the car, that she pulled the vehicle over, jumped out, and attempted to run away. He said that he had grabbed her by the jacket and shoulder in an effort to stop her from running away from him. He admitted to calling her profane names. At that point, the officer placed Mr. Rodriguez under arrest.

[¶ 6] At trial, RH was called as a witness by the defense. She testified that she and Mr. Rodriguez had gotten into an argument, but denied that he had hit her. Her testimony was that "he put his hand on my shoulder and asked me not to go."

[¶ 7] The jury apparently found the testimony of the electrical workers and the police officer more credible than RH's denial, and found Mr. Rodriguez guilty as charged. The district court sentenced him to three to five years imprisonment. Mr. Rodriguez appealed to this Court, seeking a reversal of his conviction.

## DISCUSSION

### Right to confront witness

[¶ 8] During trial, the police officer who first contacted RH related their conversation as follows:

Q. Officer, how long did it take you to arrive at the location where the victim was after you got the original call?

A. I was there very quickly. I would say, within less—probably less than five minutes.

Q. And when you arrived at the scene, were you able to identify the victim when you arrived?

A. I was, at the residence.

Q. And when you contacted the victim, what was her physical and emotional state at that time?

A. She was out of breath. She was winded. She was very upset and distraught. She appeared to have lost her composure, and at that time, it appeared that she had been involved in some sort of physical activity.

Q. And what did you do at that point?

A. At that point, I attempted to gather information on exactly what had taken place.

Q. And what did she tell you had happened?

A. She said that she had been hanging out in her residence ... with her ex-boyfriend Frank. That's all she gave me at that time was "Frank." She said that they had been fine; however, as she—as Frank had tried to ask her for a ride to another location in town, she had done so.  ...

Q. What did she do at that time?

A. She said that—she said that she had driven the vehicle with him in the passenger seat, and they had beg[u]n, you know, traveling away from the residence.

Q. And as they were traveling away from the residence, what did she tell you happened?

A. She said an argument ensued. She said that she observed Frank get very belligerent, upset, angry. . . . She said that she got scared and she pulled her vehicle over. . . . She then said that she attempted to run away from Mr.—Frank. She said she tried to run away from Frank. She said she ran around the vehicle.

Q. And in what manner did she tell you she was running?

A. As fast as she could.

Q. Okay. And what did she tell you happened as she ran toward the house?

A. She said that Frank followed her and chased her and grabbed her on her arm. And she actually—he grabbed her jacket and attempted to throw her on the ground.

Defense counsel did not object to the officer's testimony at trial. Mr. Rodriguez now contends, however, that the officer's testimony about what RH told him was hearsay. He claims that, because the prosecution did not call RH as a witness, he was denied his right under the Sixth Amendment to the United States Constitution "to be confronted with the witnesses against him."[1] Because Mr. Rodriguez claims a violation of his constitutional right to confrontation, he raises a question of law that we will review *de novo*. *Proffit v. State*, 2008 WY 102, ¶ 5, 191 P.3d 963, 966 (Wyo.2008).

[¶ 9] Mr. Rodriguez relies heavily on *Crawford v. Washington*, 541 U.S. 36, 68, 124 S.Ct. 1354, 1374, 158 L.Ed.2d 177 (2004), in which the United States Supreme Court held that the Sixth Amendment's Confrontation Clause requires a trial court to exclude hearsay that is testimonial in nature unless the declarant is unavailable and the defendant has had an earlier opportunity to cross-examine the witness. Mr. Rodriguez claims that

the police officer's testimony was hearsay and testimonial. Because the prosecution presented the police officer's testimony about RH's statements, but did not call RH as a witness, Mr. Rodriguez claims a violation of his Sixth Amendment right.

[¶ 10] The flaw in Mr. Rodriguez's argument is that RH was not unavailable as a witness. She was available. The prosecution did not call her as a witness because, as the prosecutor explained in his opening statement, she later denied that Mr. Rodriguez had hit her. Defense counsel was aware that the prosecution was not going to call RH as a witness, and in his opening statement, indicated that the defense would call her, and told the jury her testimony would be "that there was no touching . . . that nothing happened; that this is not a domestic battery." When the defense called her as a witness, her testimony, as anticipated, was favorable to Mr. Rodriguez. Because RH was available as a witness, and Mr. Rodriguez had an opportunity to confront her, he was not denied his constitutional right to confront the witness.

### Shifting burden of proof

[¶ 11] "A basic premise in our criminal law is that the burden of proof rests upon the State and never shifts." *Harper v. State*, 970 P.2d 400, 405 (Wyo.1998). Mr. Rodriguez contends that the district court improperly shifted the burden of proof to the defense "by forcing the defense to call [RH as a] witness." Like the previous issue, this claim raises an issue of Mr. Rodriguez's constitutional rights, and our review will be *de novo*. *Proffit*, ¶ 5, 191 P.3d at 966.

[¶ 12] At the close of the prosecution's case, Mr. Rodriguez moved for a judgment of acquittal. One basis for this motion was that the prosecution, by not calling RH as a witness, had denied him his opportunity to confront the witness. The district court responded:

1. Mr. Rodriguez's brief also mentions his confrontation right under the Wyoming Constitution. As he offers no independent analysis or cogent argument based on the state constitution, we

decline to address the state constitutional issue. *Leyva v. State*, 2009 WY 149, ¶ 11, 220 P.3d 791, 794 (Wyo.2009).

THE COURT: Well, let's be clear on the record. You could call the witness if you want to, couldn't you?

[DEFENSE COUNSEL:] That's correct.

THE COURT: And are you not going to call [RH]?

[DEFENSE COUNSEL:] I'm going to if you [deny] my motion.

On appeal, Mr. Rodriguez asserts that, in this exchange, the district court forced him to call the witness.[2] That was improper, Mr. Rodriguez claims, because the defense never has a duty to present evidence in a criminal case.

[¶ 13] But the district court did not force Mr. Rodriguez to call the witness. It merely pointed out that the witness was available, and asked if she would be called. It indicated that Mr. Rodriguez could choose to call her or not. As noted previously, defense counsel had said in his opening statement that he would call RH as a witness. The district court did not shift the burden of proof to the defense.

### Ineffective assistance of counsel

[¶ 14] In his third issue, Mr. Rodriguez claims that his defense counsel was ineffective because he did not object to the hearsay testimony of the police officer about RH's statements, and because he called RH as a witness, thereby waiving his Confrontation Clause claim. In order to prevail on a claim of ineffective assistance of counsel, Mr. Rodriguez must show, first, that trial counsel's performance was deficient, and second, that the deficient performance prejudiced the defense. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). The issue of ineffective assistance of counsel is reviewed *de novo. Proffit v. State,* 2008 WY 114, ¶ 33, 193 P.3d 228, 241 (Wyo.2008). "This Court invokes a strong presumption that counsel rendered adequate assistance and made all

significant decisions in the exercise of reasonable judgment. [T]he paramount determination is whether, in light of all the circumstances, trial counsel's acts or omissions were outside the wide range of professionally competent assistance." *Schreibvogel v. State,* 2010 WY 45, ¶ 47, 228 P.3d 874, 889 (Wyo.2010) (internal citation and quotation marks omitted).

[¶ 15] When the police officer testified about the statements made to him by RH, defense counsel did not object to the hearsay nature of the testimony. Mr. Rodriguez claims it is "difficult to discern" what trial strategy led to the lack of objections. We, however, can readily discern several possibilities. For example, the officer's testimony may not have been hearsay. "If the testimony was elicited in an effort to provide context for the officer's investigation, rather than for the truth of the matter asserted, it is admissible for [that] limited purpose." *Id.,* ¶ 28, 228 P.3d at 884. In Mr. Rodriguez's trial, the officer's testimony about RH's statements might have been admitted to explain the course of his investigation. RH identified Mr. Rodriguez, prompting the officer to interview him.[3] Based in part on Mr. Rodriguez's admissions, the officer then arrested him.

[¶ 16] Even if the testimony was hearsay, it might have been admissible under one of the exceptions to the hearsay rule. The "excited utterance" exception, W.R.E. 803(2), allows the admission of hearsay "relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." As the police officer testified, he arrived within approximately five minutes of the incident, and RH was "very upset and distraught" and "appeared to have lost her composure." *Compare Streitmatter v. State,* 981 P.2d 921, 926–27 (Wyo.1999) (An officer's recitation of statements by the victim, who did not testify

---

2. When arguing the motion for judgment of acquittal at trial, defense counsel asserted that there was insufficient evidence to support a conviction. The district court ruled that there was sufficient evidence. On appeal, Mr. Rodriguez does not challenge this aspect of the district court's ruling. His argument is solely that the district court erred in denying him the right to confront the witness.

3. "In such a situation, a limiting instruction would be appropriate if requested by the defendant." *Schreibvogel,* ¶ 28, 228 P.3d at 884. Mr. Rodriguez did not make such a request.

at trial, were admissible under the "excited utterance" exception even though there was a forty-five minute interval between the commission of the crime and the statements to the officer.).

[¶ 17] For these and other possible reasons, defense counsel might have believed that a hearsay objection would be ultimately unsuccessful and only draw unwanted attention to the testimony. We have previously observed that a failure to object may not be a failure at all, but rather, a tactical decision. *Cazier v. State*, 2006 WY 153, ¶ 19, 148 P.3d 23, 30 (Wyo.2006). In the circumstances of Mr. Rodriguez's trial, we cannot say that his defense counsel's performance was deficient.

[¶ 18] Moreover, Mr. Rodriguez suffered no prejudice from the lack of hearsay objections. There was no question that a dispute occurred. Mr. Rodriguez admitted to the officer that he had become upset with RH while they were in the vehicle. He admitted calling her profane names and grabbing her in an attempt to prevent her from leaving the vehicle. The police officer testified that he observed RH in an emotional and distraught condition shortly after the incident. Although RH, in her testimony, denied that she had been struck by Mr. Rodriguez, she confirmed that a dispute had occurred, that she was fearful, and had exited the vehicle to escape from Mr. Rodriguez. More significantly, this is not a case in which domestic violence took place in private, with the couple as the only witnesses. This is a case in which the incident took place outdoors, and there were three eyewitnesses to the incident. They testified that Mr. Rodriguez threw his book bag at RH and then hit her several times. Given their testimony, there is no reasonable possibility that the jury's verdict would have been more favorable to Mr. Rodriguez if the district court had excluded the police officer's testimony about what RH said to him. *See Wilks v. State*, 2002 WY 100, ¶ 21, 49 P.3d 975, 984–85 (Wyo.2002) ("An error is harmful if there is a reasonable possibility that the verdict might have been more favorable to the defendant had the error never occurred.").

[¶ 19] Mr. Rodriguez also contends that he received ineffective assistance of counsel because his trial attorney called RH as a witness, thereby waiving his Confrontation Clause claim. However, we did not reject Mr. Rodriguez's Confrontation Clause claim on the basis of waiver. We rejected it because the witness was available to testify and be confronted. Given RH's favorable testimony, defense counsel's decision to call her as a witness cannot be deemed deficient performance. Mr. Rodriguez has failed to establish his claim of ineffective assistance of counsel.

*404(b) evidence*

[¶ 20] As his final issue, Mr. Rodriguez claims that the district court erred in admitting evidence of Mr. Rodriguez's prior assaults against household members. He contends that the admission of this evidence was contrary to W.R.E. 404(b). "A trial court's decision on the admissibility of evidence is entitled to considerable deference, and will not be reversed on appeal unless the appellant demonstrates a clear abuse of discretion." *Leyva v. State*, 2007 WY 136, ¶ 17, 165 P.3d 446, 452 (Wyo.2007).

[¶ 21] W.R.E. 404(b) provides that:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

We have explained that:

A core principle of W.R.E. 404(b) is that the defendant in a criminal case "should not be convicted because he is an unsavory person, nor because of past misdeeds, but only because of his guilt of the particular crime charged." 1 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 4:21, at 691–92 (3d ed.2007).

*Leyva*, ¶ 19, 165 P.3d at 452. On the other hand, "Evidence of other crimes, wrongs, or acts is admissible if it serves a proper purpose, and is excluded only if its sole purpose is to prove that a defendant has a disposition to commit crimes." *Id.*, ¶ 27, 165 P.3d at 454.

[¶ 22]   Prior to trial, Mr. Rodriguez filed a request for notice of the prosecution's intent to introduce evidence of prior bad acts. The prosecution responded that it intended to introduce evidence of four such acts: (1) Mr. Rodriguez's battery of RH on March 19, 2007, and his subsequent plea of guilty to a charge of battery of a household member; (2) his battery of her on April 8, 2007, and his guilty plea to breach of peace; (3) his battery of her on July 4, 2008, and his subsequent plea of guilty to a charge of battery of a household member; and (4) his battery against RH's younger sister, in RH's presence on August 10, 2007, and his guilty plea on a charge of battery. The prosecution explained the purpose it intended this evidence to serve. It anticipated that Mr. Rodriguez's defense would be "that he in fact never grabbed [RH] as she ran from him but that her coat caught onto a vehicle as she ran away," or that "if he did touch [RH] at any time that it was not done in a rude[,] insolent or angry manner."[4]   To counter these defenses, the prosecution intended to offer evidence of prior batteries against RH to show Mr. Rodriguez's "lack of mistake or accident in the unlawful touching" of RH.

[¶ 23]   The district court followed the procedures and performed the analysis we set forth in *Gleason v. State,* 2002 WY 161, ¶ 18, 57 P.3d 332, 340 (Wyo.2002) and *Vigil v. State,* 926 P.2d 351, 357 (Wyo.1996). It held a pre-trial hearing to consider the admissibility of this evidence. In a thorough and detailed decision letter, the district court explained its analysis:

> Because of the inherent risk of unfair prejudice, the Wyoming Supreme Court has adopted the *Vigil/Herndon* test in addressing the admissibility of "prior bad act" evidence. *See Temen v. State,* 2009 WY 25, [¶¶ 16–17], 201 P.3d 1139, 1143–45 (Wyo.2009); ... *Sorensen v. State,* 895 P.2d 454 (Wyo.1995). Accordingly, such "bad act" evidence is admissible if:
>
> 1) the evidence is offered for a proper purpose;
>
> 2) the evidence is relevant;
>
> 3) the probative value of the evidence is not substantially outweighed by its potential for unfair prejudice; and
>
> 4) upon request, the trial court instructs the jury that the similar acts evidence is to be considered only for the proper purpose for which it was admitted.

[¶ 24]   After careful consideration of pertinent case law and treatises, the district court concluded that the evidence was being offered for a proper purpose:

> The Wyoming Supreme Court has addressed prior incidents of battery or domestic violence in these sorts of cases, stating:
>
> > Technically, the testimony describing what happened before and after the charged assault constituted Rule 404(b) evidence because it described other assaults by Mr. Sarr upon Ms. Wing. Therefore, it was not admissible if its only purpose was to show Mr. Sarr's character and that he acted in conformity with it. However, it was admissible if offered to prove other consequential facts. For example, **evidence offered to prove course of conduct is admissible when it is relevant and necessary to give a jury a complete understanding of what occurred....**
>
> *Sarr v. State,* 2007 WY 140 [¶ 19], 166 P.3d 891, 896–97 (Wyo.2007) (emphasis added). *See also Bromley v. State,* 2007 WY 20, ¶ 9, 150 P.3d 1202, 1207 (Wyo.2007) (recognizing that course of conduct evidence involving uncharged misconduct is admissible if it forms part of the history of the event or serves to enhance the natural development of the facts).
>
> Here, Rodriguez's alleged conduct on the date in question is consistent with a course of conduct previously established in his relationship with [RH], which course of conduct is shown by incidents # 1–3 above and even with respect to incident # 4 which, although it involved a physical assault on [RH's] sister, was rooted in anger and jealousy toward [RH] herself.

4.   Wyo. Stat. Ann. § 6–2–501(g)(i) provides that a person is guilty of unlawful contact if he "[t]ouches another person in a rude, insolent or angry manner without intentionally using sufficient physical force to cause bodily injury to another."

Perhaps more importantly, this "background" information is necessary to put the current incident in context and explain to a jury why [RH] pulled over the car and ran to safety. [Her] history with Rodriguez is important in explaining her behaviors and actions to a jury. Just as in *Thomas v. State*, 2006 WY 34, ¶ 34, 131 P.3d 348, 358 (Wyo.2006), this evidence demonstrates an ongoing pattern of Rodriguez's behavior ... and helps to refute Rodriguez's claim that [RH] caused her own injuries when she fled. *Id.* These are proper purposes for the admission of 404(b) evidence.

(Emphasis in original.)

[¶ 25] The district court also concluded that the evidence was relevant: "The explanation of the current event, viewed in light of the violent history between these parties, helps to explain [RH's] behavior and [Mr.] Rodriguez's conduct and, further, refutes the defense offered by Rodriguez that no 'touching' occurred." The district court carefully weighed the probative value of the evidence against its potential for unfair prejudice:

In determining the probative value of these acts committed by [Mr.] Rodriguez, it is quite clear that [he] committed these acts, as evidenced by his prior convictions. Currently, [he] disputes that any touching occurred in the incident at issue here or, possibly, that any "rude, angry, or insolent" touching occurred. The only evidence of the alleged misconduct will come from the testimony of eye witnesses, as [RH] claims no battery occurred. This prior "bad acts" evidence is somewhat cumulative in the sense that it details several incidents of domestic violence but not *unnecessarily* cumulative because the repeated incidents are necessary to explain the history and course of conduct between these parties. Finally, all of the "bad act" evidence is relatively recent, having happened within the past two (2) years.

In addressing the prejudicial nature of this evidence, the Court is wholly aware that this evidence does not place [Mr.] Rodriguez in a favorable light. The previous acts are reprehensible, though not more so than the currently charged misconduct.

[RH] may be a sympathetic victim, though she presents complicated issues in terms of her own background and response to the current situation. In fact, a jury may not find [her] particularly sympathetic given her tendency to return to associating with [Mr.] Rodriguez even after his previous violence. It is true that the previous misconduct is similar in nature to the current charge, perhaps risking a jury's conclusion that "if he did it once, he probably did it again." On the other hand, the previous acts resulted in convictions, so a jury should not be tempted to punish [Mr.] Rodriguez for having "escaped" penalty in the past.

Reviewing these factors as a whole, and especially bearing in mind applicable case law concerning the admissibility of prior acts of domestic violence under circumstances very similar to those at issue here, the Court is inclined to conclude that the prejudicial nature of these past incidents of misconduct is not so great as to prohibit the admission of this evidence on proper grounds. Additionally, the Court is of the opinion that the past relationship between [RH] and [Mr.] Rodriguez is essential to a jury's understanding of the current event, particularly [her] conduct during this event and her reaction to the current charges against [Mr.] Rodriguez. The need to paint the entire picture, and to refute [his] defenses, makes this evidence proper and admissible.

(Emphasis in original.)

[¶ 26] On appeal, Mr. Rodriguez challenges the district court's conclusions. He claims that the purposes for introducing the evidence, as set forth by the prosecution and discussed by the district court were "but a smokescreen to have evidence of Mr. Rodriguez'[s] prior assaults against household members admitted to assure a conviction." He also claims that the "prejudicial value of such evidence clearly outweighs any probative value." Beyond these bare statements of disagreement with the district court, however, Mr. Rodriguez does not demonstrate how any of the district court's conclusions were incorrect or contrary to law. "[A]s long as there exists a legitimate basis for the trial

court's ruling, that ruling will not be disturbed on appeal." *Sanchez v. State,* 2006 WY 116, ¶ 20, 142 P.3d 1134, 1140 (Wyo. 2006). Given the district court's well-reasoned and thorough analysis of the evidence at issue, it is easy to discern a legitimate basis for its ruling that the evidence was admissible. The district court's decision was not an abuse of discretion, and we affirm Mr. Rodriguez's conviction.